1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   HB DEVELOPMENT, LLC, a
    Washington limited liability
8   corporation; FRASER HAWLEY, an          NO:   2:13-CV-5050-RMP
    individual; SHARON BROWN, an
9   individual and the marital estate
    thereof; MS. JOLENE K.                  ORDER DENYING DEFENDANTS'
10  BOUGHTON, a married person, as          MOTION TO STRIKE AND
    assignee of HB Development, LLC;        GRANTING DEFENDANTS'
11  and MR. JOHN B. CROOK, a married        MOTIONS FOR SUMMARY
    person, as assignee of HB               JUDGMENT
12  Development, LLC,

13                        Plaintiffs,

14       v.

15  WESTERN PACIFIC MUTUAL
    INSURANCE, a foreign insurance
16  company; LOCKTON RISK
    SERVICES, a foreign insurance
17  company; DOES 1-10, insurance
    companies; DOES 11-25, insurance
18  brokers, claims administrators and
    insurance agents,
19
                          Defendants.
20

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 1

BEFORE THE COURT are Defendants' Motions for Summary Judgment, **ECF Nos. 47 and 49**, and a related Motion to Strike, **ECF No. 67**. The Court heard oral argument on the motions on January 12, 2015, in Richland, WA. Plaintiffs HB Development, LLC, Fraser Hawley, and Sharon Brown were present and represented by John Herrig. Plaintiffs Jolene Boughton and John Crook were present and represented by Maury Kroontje. Lowell McKelvey represented Defendant Western Pacific, and Alan Hughes represented Defendant Lockton Risk Services.

The Court has considered the parties' arguments, pleadings, all related filings, and is fully informed. This order memorializes the Court's oral rulings and issues new rulings on motions for which the Court reserved ruling.

This case involves an insurance dispute over coverage of a construction defect claim brought by Plaintiffs Jolene Boughton and John Crook regarding defects in their home built by Plaintiffs HB Development, LLC (hereinafter "HB"), Fraser Hawley, and Sharon Brown, in West Richland, Washington. Defendant Western Pacific Mutual Insurance has denied coverage and duties to defend or indemnify HB, Hawley, and Brown for Boughton and Crook's claims against them. For the reasons stated below, the Court denies the motion to strike and grants Defendants' motions for summary judgment.

# BACKGROUND

**A. Factual History[1]**

HB was a Washington limited liability corporation licensed as a general contractor.  ECF No. 27 at 2.  Plaintiffs Fraser Hawley and Sharon Brown, husband and wife, were members of HB.  ECF No. 27 at 2.  HB joined the RWC Insurance Advantage Program in 2003, ECF No. 75 at 3, and carried a general liability insurance policy provided by Westport Insurance Corporation.  ECF No. 75 at 14.  However, the insurance provider changed in 2004, and beginning on September 4, 2004, HB's general liability insurance was provided by Western Pacific Mutual Insurance (hereinafter "Western") through the RWC program.  ECF No. 75 at 3-5.  Lockton Risk Services (hereinafter "Lockton") served as the

---

[1] "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  However, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of that facts . . . ."  *Id*.  In this case, the Court mostly relied upon facts that were stipulated to in the parties' Joint Statement of Uncontroverted Facts, ECF No. 75.

underwriting administrator and agent for Western from August 2004 until

September 2007 when Integrity Underwriters, Inc. (Integrity) took over.  ECF No.

75 at 4.

In addition to a change in insurance providers, the type of insurance policy

offered under the RWC program changed as well.  Prior to these changes, Lockton

sent a letter to Mr. Hawley on July 7, 2004, signed by Joe Perkins, Account

Manager.  The letter read:

> As you know, the insurance market place is constantly changing
> including the appetite of carriers on certain classes of business.  Please
> be advised that we are no longer able to use the current carrier for
> your insurance coverage.  Enclosed is a notice of non-renewal from
> your current insurance carrier.  However, we will be providing you
> with a replacement policy underwritten by Western Pacific Mutual
> Insurance Company, a Risk Retention Group.
>
> You can expect to receive your new policy within the next couple of
> weeks.  Your policy will be sent along with a "Policy Holder Notice"
> that explains the differences in coverage from your current policy.
> You will also receive a "Coverage Update Questionnaire".  The new
> insurance carrier requires that this questionnaire be completed and
> returned.
>
> If you have any questions, please contact our office toll-free at 888-
> 662-3649.
>
> Thank you for your participation in the RWC Insurance Advantage.
> We do appreciate your business.

ECF No. 50-7.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 4

HB's previous policy through Westport was an occurrence-based policy. ECF No. 76 at 34. The new Western policy was a claims-made policy.[2] ECF No. 50-8 at 11.

On July 25, 2004, Mr. Hawley signed the form entitled "Important Policy Holder Information," which included "Important Notice—Claim Made Coverage Applies" and "Important Notice Claim Made Coverage—Additional Explanation." ECF No. 75 at 5. These forms explained that claims-made coverage applies, and warned of a "potential coverage gap" after the termination of the policy's extended claim reporting period "if prior acts coverage is not subsequently provided by another insurer." ECF No. 50-8 at 11. The Claim Made Notice stated in bold that

---

[2] Claims-made coverage means that coverage is limited to acts or omissions for which a claim is first made against the insured while the policy is effective. Once the policy has terminated and any extended reporting periods have ended, coverage ceases, even for acts or omissions that occurred but were not reported during the coverage period. ECF No. 50-8 at 11. In contrast, an occurrence-based policy covers all claims arising from an act or omission that occurs while the policy is in effect, even if such claims are made after the policy has terminated. *Am. Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 517 (2004).

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 5

it strongly encouraged the insured to call its insurance representative with questions and provided a toll free phone number.  *Id.*

Thereafter, HB's first policy purchased from Western through Lockton began on September 4, 2004.  ECF No. 75 at 5.  HB renewed its policy from Western, first through Lockton and later through Integrity, five times, with its last term ending on September 4, 2010.  ECF No. 75 at 6.  Each year that HB procured insurance through Lockton, Certificates of Insurance with the "claim made" box checked under "type of insurance" were sent to the Washington Department of Labor & Industries showing that HB was insured.  ECF No. 76 at 6; ECF No. 50-11 at 1.

While insured under the claims-made policy, HB contracted with Plaintiffs John Crook and Jolene Boughton, husband and wife, to construct a house in West Richland, Washington, in March of 2006.  ECF No. 75 at 11; ECF No. 52-1 at 5.  Beginning in September 2007 and continuing through September 2010, Crook and Boughton wrote to HB, Hawley, and Brown about problems with the quality and timeliness of the construction.  ECF No. 75 at 8.  No one from HB informed Western of these complaints.

On August 11, 2008, Hawley and Brown resolved to dissolve HB, effective that day.  ECF No. 75 at 2, 6; ECF No. 52-4 at 16.  HB filed a Certificate of

Cancellation with the Washington Secretary of State on December 18, 2009.  ECF No. 75 at 2-3; ECF No. 52-4 at 17.

Despite being offered extended reporting period plans, neither HB nor its members ever purchased any form of extended tail coverage.  ECF No. 75 at 6-8.

**B.    Procedural History**

On January 23, 2012, Crook and Boughton served written notice of their construction defect, property damage, and loss of use claims to HB, pursuant to RCW 64.50.020, and provided a copy to Western.  ECF No. 75 at 2; ECF No. 48 at 21.  On February 1, 2012, Diane Esser, a claim representative for Integrity Administrators, denied coverage for Crook and Boughton's claim.  ECF No. 48 at 58-59.  On March 12, 2012, Crook and Boughton filed a lawsuit against HB, Hawley, and Brown in Benton County Superior Court.  ECF No. 75 at 2.  The parties reached a settlement agreement in which HB, Hawley, and Brown confessed judgment in the amount of $600,000 to Crook and Boughton.  ECF No. 48 at 9-13.  Benton County Superior Court Judge Mitchell found the settlement to be reasonable in the amount of $420,000.  ECF No. 48 at 16-19.  HB and its members agreed to pay to Crook and Boughton all settlement funds obtained from subcontractors or insurers and to "assign all rights, claims, and defenses it has, including but not limited to claims for a defense of the Litigation, claims for

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 7

coverage under the Policies and any extra-contractual damages or claims." ECF No. 48 at 9-13.

On March 28, 2013, HB, Hawley, and Brown commenced an action in Benton County Superior Court against Western, Lockton, First Mercury Insurance Company, Clarendon National Insurance Company, and Western World Insurance Company.[3]  ECF No. 1 at 2.  Western removed the case to this Court on April 26, 2013.  ECF No. 1.  On August 12, 2013, Plaintiffs filed their Second Amended Complaint, which added Crook and Boughton as plaintiffs.  ECF No. 27.

Plaintiffs bring three causes of action against both Western and Lockton:  (1) negligence, (2) bad faith, and (3) violation of the Washington State Consumer Protection Act.  Additionally, Plaintiffs claim two additional causes of action against Western alone:  (1) declaratory judgment, and (2) breach of contract.[4]

---

[3] All served Defendants other than Western and Lockton have since been dismissed.  *See* ECF Nos. 37, 39 & 41.

[4] In their response briefs, Plaintiffs argued additional causes of action not pleaded in their Second Amended Complaint.  For example, Plaintiffs argued the tort of negligent misrepresentation and an additional theory of negligence based on Lockton's failure to secure suitable insurance and properly disclose policy information.  ECF No. 56 at 6.  The Court will only consider those claims that were

Western and Lockton filed separate motions for summary judgment, ECF Nos. 47 and 49, which Plaintiffs oppose, ECF Nos. 51 and 56. Lockton, joined by Western, also filed a motion to strike the declarations of Flo Brown, ECF No. 67, which Plaintiffs also oppose, ECF No. 72.

## II.    DEFENDANTS' MOTION TO STRIKE

Lockton moved the Court to strike the declarations of Flo Brown,[5] and Western joined in the motion. ECF Nos. 67 and 71. The Court denied this motion orally at the hearing on January 12, 2015.

Plaintiffs filed two declarations by Flo Brown in support of their response briefs. ECF Nos. 52-2 and 58. The declarations were filed immediately before and after the discovery cut-off.[6] ECF No. 67 at 4. In her declarations, Flo Brown

---

pleaded in the Second Amended Complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[5] Flo Brown is Plaintiff Sharon Brown's mother and a former HB employee.

[6] The discovery cut-off was October 3, 2014. Flo Brown's first declaration was filed on October 2, 2014, ECF No. 52-2, and her second declaration was filed on October 7, 2014, ECF No. 58.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 9

states that as an employee of HB her responsibilities included procuring

insurance.[7]  ECF No. 52-2 at 2; ECF No. 58 at 2.

Plaintiffs' Rule 26(a)(1)(A)(i) disclosures adopted the witness disclosures

filed by the parties in the underlying construction defect litigation in Benton

County Superior Court.  ECF No. 67 at 2.  These disclosures listed Flo Brown and

stated that "Ms. Brown was the bookkeeper for HB Development, LLC.  Ms.

Brown will testify as to the settlement amount, amount unpaid, personal delivery

of the warranty policy and cost issues on the contract."  ECF No. 68 at 16.  The

adopted disclosures also contained a catch-all category of "Past and Present

Employees and/or Representatives of HB Development LLC" who were to testify

about "the Project and any and all related issues" and "any other topic necessary to

rebut the testimony of defense witnesses."  ECF No. 6 at 14.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to disclose to

the other parties "the name . . . of each individual likely to have discoverable

information—along with the subjects of that information—that the disclosing party

may use to support its claims or defenses . . . ."  A party must supplement or

correct its disclosure in a timely manner if it learns that the disclosure is

---

[7] She further states:  "Fraser Hawley relied on me to make insurance decisions for

HB Development starting in 2003."  ECF No. 52-2 at 2.

1  incomplete or incorrect in some material respect and "if the additional or corrective

2  information has not otherwise been made known to the other parties during the

3  discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to

4  provide information or identify a witness as required by Rule 26(a) or (e), the party

5  is not allowed to use that information or witness to supply evidence on a motion, at

6  a hearing, or at a trial, unless the failure was substantially justified or is harmless."

7  Fed. R. Civ. P. 37(c)(1). "A district court has wide discretion in controlling

8  discovery" and "particularly wide [discretion] when it comes to excluding

9  witnesses." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th

10  Cir. 2014) (internal quotations and citations omitted).

11       Defendants moved to strike Flo Brown's declarations on the basis that

12  Plaintiffs did not accurately disclose the information possessed by Flo Brown in

13  their Federal Rule of Civil Procedure 26(a)(1)(A)(i) initial disclosures. Defendants

14  admitted that Plaintiffs disclosed Flo Brown as an individual likely to have

15  information, ECF No. 67 at 3, but argued at the hearing that they were required to

16  sift through 139 pages of discovery in order to find any mention of Flo Brown.

17  Additionally, Defendants contend that they were not notified that Flo Brown

18  possessed important information about one of the main topics in this case, namely,

19  HB's communications with Lockton and its insurance coverage decisions. ECF

20

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 11

No. 67 at 4.  As a result, Defendants argue, they were prejudiced by her declarations.  ECF No. 67 at 4.

Many of Plaintiffs' claims against Defendants rely on evidence about HB's communications and decisions related to its insurance coverage.  If, as she states in her declaration, Flo Brown made insurance decisions for HB, then she likely possesses information important to the claims and defenses in this case.  Certainly Plaintiffs' initial disclosures could have been more specific as to the information possessed by Flo Brown and relevant to this particular case.  The Court nevertheless found that Plaintiffs' failure to disclose was harmless because Defendants had sufficient notice of Flo Brown's knowledge of material information and importance to the case.

Defendants learned of the details of Flo Brown's role at HB during the depositions of Fraser Hawley and Sharon Brown on April 9, 2014.  ECF No. 72-2 at 62, 64-65, 70-72, 74.  While a mere passing reference in another witness's deposition testimony to an individual with knowledge does not satisfy a party's disclosure obligations, *Ollier*, 768 F.3d at 863, here there was more than mere mention of Flo Brown.  Mr. Hughes, counsel for Lockton, asked Mr. Hawley several questions about Flo Brown including, "Did Flo Brown have authorization from you at HB Development, LLC, to discuss insurance issues with Integrity

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 12

Underwriters and RWC?" and "Did [Flo Brown] ultimately make the insurance

decisions for HB Development . . . ."  ECF No. 72-2 at 65.

This case is not like *Ollier* where the defendants completely failed to timely

disclose 38 witnesses and then sought to call them at trial, arguing that the

witnesses had been disclosed because they had been mentioned in other witnesses'

depositions.  Here, Defendants' attorneys demonstrated their knowledge of Flo

Brown's role through their deposition questions.  In light of their questions,

Plaintiffs may have believed that supplemental disclosures about Flo Brown were

unnecessary.

Additionally, there was ample time between April 9, 2014, when Defendants

deposed Fraser Hawley and Sharon Brown, and the discovery cut-off of October 2,

2014.  During that time, Defendants could have deposed Flo Brown or sought

additional information about her from Plaintiffs.  They also could have sought

leave from the Court to conduct limited additional discovery after the discovery

cut-off.  Yet Defendants failed to pursue any of these avenues.

Finally, there is no evidence that Plaintiffs intentionally concealed this

information in bad faith or for the purpose of prejudicing Defendants.  Therefore,

in light of Defendants' demonstrated knowledge of Flo Brown and their failure to

pursue other avenues of expanding this knowledge, the Court declined to strike Flo

Brown's declarations, and denied Defendants' motion.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 13

### III.    STANDING

Western argues that Plaintiffs lack standing to bring suit.  ECF No. 47 at 7-9. To establish standing to bring a suit, a plaintiff must show three elements:  (1) injury in fact, (2) causation, and (3) redressability.  *See, e.g., Bennett v. Spear*, 520 U.S. 154, 167 (1997).  Western appears to be attacking the first element, injury in fact, which requires that a plaintiff demonstrate that "he personally has suffered some actual or threatened injury as a result" of the defendant's conduct.  *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).

**A.    HB's Standing to Bring Suit**

Western contends that HB lacks standing to sue because once HB's certificate of cancellation was filed on December 18, 2009, HB legally ceased to exist and its rights and the rights of its members evaporated.  ECF No. 47 at 7-9.

Under Washington State law, as it stood in 2009 when HB filed its notice of cancellation, an LLC constituted a separate legal entity until its certificate of formation was cancelled.[8]  RCW 25.15.070(2)(c) (2009).  Once an LLC's

---

[8] A new law passed in response to *Chadwick Farms Owners Ass'n v. FHC LLC*, 166 Wn.2d 178, 189 (2009), and made effective on June 10, 2010, provided that dissolution of an LLC does not impair any remedy available to the LLC, its managers, or its members, unless the LLC has filed a certificate of dissolution with

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 14

certificate has been canceled, it can no longer prosecute or defend suits. *Chadwick Farms Owners Ass'n v. FHC LLC*, 166 Wn.2d 178, 189, 194 (2009) ("A dissolved company still exists for the purpose of winding up, during which it can sue or be sued. But once a limited liability company's certificate of formation is canceled, it no longer exists as a separate legal entity for any purpose."). Therefore, HB ceased to exist on December 18, 2009, and does not have standing to bring this suit.

Plaintiffs' primary argument in favor of finding that HB does have standing to sue seems to rest on a sense of unfairness. Specifically, Plaintiffs argued at the hearing that if it was as simple as finding that HB lacked capacity to sue or be sued, then Western could have made this argument in Benton County Superior Court in the underlying litigation brought by Crook and Boughton, and had the entire underlying lawsuit dismissed. Plaintiffs argued that Western's failure to bring this argument in the underlying litigation on behalf of HB, Hawley, and Brown, constitutes bad faith on Western's part.

---

the Secretary of State and no action or proceeding is commenced on any existing claim within three years. RCW 25.15.303 (2010). The 2010 amendment was not explicitly made retroactive, and the Washington Court of Appeals has held that it should not be applied retroactively. *Houk v. Best Dev. & Const. Co., Inc.*, 179 Wn. App. 908, 914-15 (Wash. Ct. App. 2014).

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 15

**B.    Hawley and Brown's Standing to Bring Suit**

Western argues that because HB no longer exists as a legal entity, Hawley and Brown do not have standing as its successors in interest, intended beneficiaries, or assignees.  ECF No. 47 at 7-9.  Western contends that Hawley and Brown did not inherit the right to sue to redress any alleged injuries suffered by HB because "nothing in the LLC statute or the Western Pacific policy provides for survival of any such rights to LLC members."  ECF No. 47 at 9.

However, Section II of the insurance policy, which defines who is an insured, states that when the insured is an LLC, the members are also insureds, "but only with respect to the conduct of [the LLC's] business."  ECF No. 50-14 at 205.  As members of HB, Hawley and Brown were insureds under the policy with respect to HB's conduct.  The parties stipulated to this fact.  ECF No. 75 at 3.  It naturally follows that as HB's members and insureds, Hawley and Brown had standing to sue before HB was terminated and cancelled.

However, the fact that Hawley and Brown would have had standing to sue before HB was cancelled does not mean that Hawley and Brown have standing to sue today.  At the hearing, Western argued that if HB lacks standing to sue or be sued, it rationally follows that HB's members lack standing as well.  Western did not provide any legal support for this argument, and in fact, conceded that the parties' briefs on the issue were inadequate.  Plaintiffs' primary argument in

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 16

1   support of standing was that Hawley and Brown should have standing based on the

2   personal liability they incurred when they failed to properly wind up HB's

3   business.

4       Although an LLC's members do not normally bear personal liability for the

5   LLC's debts, obligations, or liabilities, its members may be personally liable if

6   they fail to wind up the LLC's affairs properly.  *Chadwick Farms*, 166 Wn.2d at

7   198.  The Washington Supreme Court has stated that "a dissolved limited liability

8   company must . . . properly complete the winding up process, which includes

9   paying or making arrangements to pay known obligations and claims, even if

10  unmatured or contingent."  *Chadwick Farms*, 166 Wn.2d at 197.  In this case,

11  Crook and Boughton informed Hawley and Brown of defects in the house on

12  numerous occasions prior to the dissolution of HB, yet Hawley and Brown

13  dissolved HB without addressing Crook and Boughton's claims.

14      The Washington Supreme Court has indicated that LLC members who fail to

15  properly wind up an LLC's affairs may be personally liable even after the LLC's

16  certificate of formation has been canceled, and the LLC has ceased to exist as a

17  legal entity.  *See Chadwick Farms*, 166 Wn.2d 178, 201-03.  Limiting suit against

18  a LLC's members who incurred personal liability for failing to wind up the

19  business only until the LLC's certificate of formation is cancelled would severely

20  undercut the intent of the personal liability exception and cripple the protection

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 17

1  that the exception affords to injured parties.  Hawley and Brown appear to have

2  incurred personal liability for failing to properly wind up HB's business, even after

3  HB had ceased to exist as a legal entity.  Therefore, Hawley and Brown have

4  suffered injury in fact and have standing to sue Western and Lockton.

5  **C.    Crook and Boughton's Standing to Bring Suit**

6          Western argues that Hawley and Brown could not have assigned to Crook

7  and Boughton any rights against Defendants in the settlement agreement.  ECF No.

8  47 at 7-9.  Western's argument is based largely on Western's contention that

9  Hawley and Brown lack standing to sue as members of an LLC that no longer

10 exists as a legal entity.

11         Plaintiffs argue that Crook and Boughton have standing because Hawley and

12 Brown assigned their rights, claims, and defenses against Western and Lockton to

13 Crook and Boughton in the underlying settlement agreement.  ECF No. 48, Ex. 1 at

14 3.  The Court notes that the insurance policy in this case requires Western's written

15 consent before the insured may transfer its rights to another party, ECF No. 50-14

16 at 26, and there is no evidence that Hawley or Brown obtained Western's written

17 consent prior to entering into this settlement agreement or assigning their rights to

18 Crook and Boughton.

19         On the other hand, "it is well established that a claim by an insured against

20 his insurer may be assigned to the injured party."  *Safeco Ins. Co. of Am. v. Butler*,

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 18

118 Wn.2d 383, 397 (1992) (quoting *Kagele v. Aetna Life & Cas. Co.*, 40 Wn.App. 194, 197 (1985) (internal quotation marks omitted).  Whether the transfer provision in this case is valid under Washington State law is a question that the parties did not brief.  Therefore, the Court will not make a determination on that basis, but will decide whether Crook and Boughton have standing based on the parties' arguments.  Having found that Hawley and Brown personally have standing to sue, the Court also finds that Crook and Boughton have standing to sue based on assignment.

The Court dismisses HB, because HB is no longer a legal entity, but the Court does find that Hawley, Brown, Crook, and Boughton all have standing to sue.

## IV.   MOTIONS FOR SUMMARY JUDGMENT

Western and Lockton move for summary judgment on all three causes of action asserted against them:  negligence, bad faith, and violation of the Washington Consumer Protection Act.  ECF Nos. 47 and 49.  Western also moves for summary judgment on the declaratory judgment and breach of contract claims that Plaintiffs assert against it.  ECF No. 47.

**A.   Legal Standard**

Summary judgment is appropriate when the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the moving party

demonstrates the absence of a genuine issue of material fact, the burden then shifts

to the non-moving party to set out specific facts showing a genuine issue for trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  The non-moving party

"must do more than show that there is some metaphysical doubt as to material

facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

(1986).  A genuine issue of material fact exists if sufficient evidence supports the

claimed factual dispute, requiring "a jury or judge to resolve the parties' differing

versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  If the nonmoving party fails to make such

a showing for any of the elements essential to its case for which it bears the burden

of proof, the trial court should grant the summary judgment motion.  *Id.* at 322.

The evidence presented by both the moving and non-moving parties must be

admissible.  Fed. R. Civ. P. 56(e).  Evidence that may be relied upon at the

summary judgment stage includes "depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . admissions, [and]

interrogatory answers . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  The court will not

presume missing facts, and non-specific facts in affidavits are not sufficient to

support or undermine a claim.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89

(1990).

In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). However, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of that facts . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.    Coverage of the Claims Under the Policy:  Declaratory Judgment and Breach of Contract Claims**

Plaintiffs seek a declaratory judgment that Western had a duty to defend and indemnify HB and its members, ECF No. 27 at 6-7, and claims that Western breached its insurance contracts with HB by failing to do so.  ECF No. 27 at 8. Western argues that it had no duty to defend or indemnify because Crook and Boughton's claims against HB were not covered by HB's insurance policy, ECF No. 47 at 32-33.

*1.    Legal Standard*

An insurer must defend "if there is any reasonable interpretation of the facts or the law that could result in coverage." *Am. Best Food, Inc. v. Alea London, Ltd.*,

168 Wn.2d 398, 405 (2010) (en banc).[9]  An insured is relieved of this duty "[o]nly

if the alleged claim is clearly not covered by the policy." *Truck Ins. Exch. v.*

*Vanport Homes, Inc.*, 147 Wn.2d 751, 760 (2002) (en banc).  "[T]he interpretation

of language in an insurance policy is a matter of law." *Moeller v. Farmers Ins. Co.*

*of Wash.*, 173 Wn.2d 264, 271 (2000) (en banc).  An insurance contract must be

viewed in its entirety; courts cannot interpret a phrase in isolation. *Id.*  Ambiguity

should be resolved in favor of the insured, and "exclusionary clauses are construed

strictly against the insurer." *Id.*  An insurance contract "should be given a practical

and reasonable rather than a literal interpretation, and not a strained or forced

construction leading to absurd results. *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338,

341 (1987) (en banc) (quoting *E-Z Loader Boat Trailers, Inc. v. Travelers Indem.*

*Co.*, 106 Wn.2d 901, 907 (1986)) (internal quotation marks omitted).

>    2.    *Coverage Analysis Under the Terms of HB's Insurance Policy*

There is no genuine issue of material fact as to whether Western had a duty

to defend HB and its members against Crook and Boughton's claims, because there

---

[9] Federal courts apply state law to issues of contract or insurance law.  *See, e.g.,*

*United States v. Nationwide Mut. Ins. Co.*, 499 F.2d 1355, 1357 (9th Cir. 1974);

*Gillespie v. Travelers Ins. Co.*, 486 F.2d 281, 283 (9th Cir. 1973); *Stanford Univ.*

*Hosp. v. Fed. Ins. Co.*, 174 F.3d 1077 (9th Cir. 1999).

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 22

is no reasonable interpretation of HB's commercial general liability insurance

policy that would provide coverage of Crook and Boughton's underlying claims.

ECF No. 50-14, Ex. M.

Under the policy, coverage for bodily injury and property damage liability is

explicitly limited to instances in which a claim for damages is first made against

any insured, in accordance with Paragraph c, during the policy period or any

Extended Reporting Period.[10]  *Id.*  Paragraph c provides that "[a] claim by any

person or organization seeking damages will be deemed to have been made at the

earlier of the following times:  (1) When notice of such claim is received and

recorded by any insured or by us, whichever comes first; . . . ."  *Id.*  Because Crook

and Boughton wrote to HB, Hawley, and Brown on several occasions between

2007 and 2010, complaining about defects in the construction, Plaintiffs contend

that this provision alone provides coverage for the underlying claims.

However, Section IV of the policy further requires the insured to promptly

notify Western of any claims made against it:

---

[10] The policy at issue contains three different types of coverage:  Coverage A is for

bodily injury and property damage liability, Coverage B is for personal and

advertising injury liability, and Coverage C is for medical payments.  *Id.* at 197,

201, 203.

2. Duties in The Event Of Occurrence, Offense, Claim Or Suit
 a. You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim . . . . Notice of an "occurrence" or offense is not notice of a claim.
 b. If a claim is received by any insured, you must:
  (1) Immediately record the specifics of the claim and the date received; and
  (2) Notify us as soon as practicable.
  You must see to it that we receive written notice of the claim as soon as practicable.
 c. You and any other involved insured must:
  (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit"; . . . .

*Id.* at 206-07.  Another notice provides the phone number and mailing address for reporting claims and states:  "*Remember* – Prompt reporting of a claim or potential claim is *very important*.  Under a claims-made policy, only the reporting of a claim can trigger coverage."  *Id.* at 257.  The language is clear that coverage under the policy is contingent on an insured notifying Western of any claims made against it, and there is no evidence, nor do Plaintiffs argue, that HB or its members notified Western of Crook and Boughton's complaints prior to 2012.

Additionally, the policy clearly states that it provides only claims-made coverage, and what that means.  Section 1 of the policy begins with the statement, at the top of the first page of the coverage form, in large, capital letters:

"COVERAGES A AND B PROVIDE CLAIMS-MADE COVERAGE PLEASE READ THE ENTIRE FORM CAREFULLY."  *Id.* at 197.  Similarly, the Policy Holder Notice Please Read Carefully, which is highlighted by a finger-pointing

icon and the words "ATTENTION INSURED," states: "**CLAIMS MADE COVERAGE APPLIES, THE COMMERCIAL GENERAL LIABILITY INSURANCE COVERAGE IS WRITTEN ON A CLAIMS-MADE BASIS.**" *Id.* at 245.

The policy then states that in order for bodily injury or property damage to be covered, a claim must be made before the termination of coverage. *Id.* It proceeds to warn:

> It is not uncommon for claims to be made long after the "Bodily Injury," "Property Damage" or "Personal and Advertising Injury" occurs. It is important that you are aware of the potential gap in coverage, which may result if coverage is either: Renewed with an Occurrence Policy, Renewed with Claims-Made Policy with a Retroactive Date later than the one applicable to the expiring claims-made policy, or Terminated.

*Id.* "There is no coverage under a Claims-Made Policy, for claims made against you after the termination date of the coverage, except as explained below." *Id.*

HB's policy automatically includes a Basic Extended Reporting Period (BERP), which extends the period to report claims and receive coverage for 60 days. Claims that arose from occurrences or offenses during the policy period that were *not* reported to the insurer during the policy period, must be made within 60 days of the end of the policy period to be covered. Claims that arise from occurrences or offenses during the policy period of which the insurer *was notified*

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 25

during the policy period or within 60 days thereafter, must be made within five years from the end of the policy period to be covered. *Id.* at 248.

Moreover, the policy outlines several options for purchasing a supplemental extended claim reporting period (SERP), which extends indefinitely the time for reporting a claim and receiving coverage. *Id.* The policy contains another warning: "IF NO SERP IS PURCHASED, NO COVERAGE WILL EXIST AFTER THE TERMINATION OF THE BASIC EXTENDED CLAIM REPORTING PERIOD, RESULTING IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER INSURER." *Id.* This notice continues with explanations, warnings, and examples for an additional six pages.

Plaintiffs contend that the policy is satisfied by the complaints that Crook and Boughton made to HB, Hawley, and Brown, which Plaintiffs argue constituted "claims," and which were made prior to the termination of coverage. Even if Plaintiffs are correct that the complaint letters qualified as "claims" under the policy, Plaintiffs did not notify Western of the complaint letters or the occurrences on which the letters were based before the termination of coverage or within the 60 day period following the end of the policy period. Therefore, pursuant to the plain language of the policy, the claims could not feasibly have been covered.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 26

1    Furthermore, the policy explicitly defines a qualifying "claim" as one made

2    for damages.  Notification of an occurrence or offense alone, although required by

3    the policy, does not trigger coverage on its own.  *Id.* at 247.  Both notification of

4    the occurrence and notification of the claim are required.  Western argued at the

5    hearing that none of the five letters that Crook and Boughton sent to HB, Hawley,

6    and Brown actually make a claim for damages.  Instead, the letters contain

7    complaints, and some even contain threats to sue, but none requests damages,

8    corrections or repair of the construction defects, or money.

9    Western concedes that had HB, Hawley, and Brown informed Western of

10    these complaint letters prior to the termination of their coverage, there might be a

11    genuine issue of material fact as to whether the underlying claims were covered by

12    the policy.  But because Western was not informed of the claims or the occurrences

13    on which the claims were based until well-after the policy had been terminated,

14    Western argues that there is no genuine issue about whether the claims were

15    covered.

16    HB's last policy expired on September 4, 2010.  *Id.* at 191.  The BERP

17    ended 60 days thereafter, in November of 2010.  Although Hawley and Flo Brown

18    discussed it, ECF No. 75 at 6, HB did not purchase a SERP.  No claim was made

19    until 2012, when Crook and Boughton simultaneously notified Brown and Western

20    of their claim pursuant to RCW 64.50.020.  ECF No. 48 at 25.  No party has

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 27

alleged or provided any evidence indicating that Western was aware of Crook and Boughton's claim or the occurrence giving rise to it prior to this notice. Therefore, there is no genuine issue of material fact as to whether the claims were covered by the policy.

Similarly, because there is no reasonable interpretation of the policy that would provide coverage for the claims, there is no genuine issue of material fact regarding whether Western had a duty to defend or indemnify HB or its members in the underlying lawsuit. Without a duty to defend or indemnify, Western did not breach the insurance contract by refusing to defend. Therefore, the Court grants Western's motion for summary judgment on Plaintiffs' declaratory judgment and breach of contract claims against Western.[11]

---

[11] Because the Court has determined that the temporal circumstances of the underlying claims preclude coverage of the claims under the policy, the Court need not decide whether the policy would have extended coverage to Hawley and Brown in their capacity as HB's members for claims made against them pertaining to their conduct for HB, after HB ceased to exist as a legal entity. *See supra* part III.B.

3.    _Legality of Early Termination_

Plaintiffs also argue that coverage under HB's policy was illegally and retroactively annulled, in violation of RCW 48.18.320, because the policy was terminated early, but after Hawley and Brown had received complaints from Crook and Boughton about the house.  ECF No. 51 at 14-15.  RCW 48.18.320 states:

> No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and insured after the occurrence of any such injury, death, or damage for which the insured may be liable, and any such annulment attempted shall be void.

RCW 48.18.320.  The Washington Supreme Court has held that this statute applies to claims-made policies.  _Am. Cont'l Ins. Co. v. Steen_, 151 Wn.2d 512, 518-19 (2004).

RCW 48.18.320 "voids agreements between an insurer and insured to cancel or rescind policies if, and only if, the agreement is made after the occurrence of a potentially covered injury, death, or damage."  _Id._ at 522.  The purpose of the statute is to "protect the injured and damaged . . . ."  _Id._ at 524.

_Steen_ is inapposite to the circumstances of this case.  In _Steen_, the insurer and insured agreed to cancel the policy prior to its termination date.  The terms of the agreement nullified coverage for claims of which the insurer had not received notice by the cancellation date, even if a covered occurrence happened prior to cancellation.  _Id._ at 517.  There was no dispute that the injury would have been

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 29

1    covered if the policy had not been canceled prematurely because a claim was filed

2    within the original policy period.  *Id.*

3          In contrast, although the policy in this case was terminated prematurely, the

4    claims were not filed within the original policy period.  The policy was scheduled

5    to terminate on September 4, 2010.  The policy was terminated prematurely, in

6    March of 2010, by Hawley's request, because HB had dissolved.  Even if the

7    policy had not terminated prematurely, the claims still would not have been

8    covered, because Plaintiffs did not provide notice of the claims until 2012, a year

9    and four months after the policy would have naturally ended.  Additionally, there is

10   no evidence that either HB and its members or Western prematurely terminated the

11   policy in order to avoid potential liability for any claims, including those later

12   brought by Crook and Boughton.

13         Finally, although the Washington Supreme Court's statements in *Steen* seem

14   clear and unequivocal, applying *Steen* to this case would be illogical.  Hawley and

15   Brown requested early termination of the policy but are now asserting that the

16   termination was illegal.  When Hawley and Brown canceled the policy, they took

17   no steps to protect themselves in the future, such as purchasing SERP, even though

18   they knew of Crook and Boughton's complaints about the house, and even given

19   the potential that they might incur personal liability for failing to wind up the

20   business properly.  Now they would have the Court find that the cancellation was

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 30

an illegal retroactive annulment.  To hold such would be, in effect, to give HB free

unlimited tail coverage.  The Court finds no evidence that the legislature intended

RCW 48.18.230 to provide coverage in this situation.  Therefore, the Court

dismisses Plaintiffs' declaratory judgment and breach of contract claims against

Western.

**C.    Negligence Claims**

Plaintiffs allege that Western and Lockton acted negligently when they sold

HB a claims-made policy to comply with RCW 18.27.050, knowing that the statute

contemplated an occurrence-based policy.  ECF No. 27 at 4-5.  RCW 18.27.050

requires a contractor to have insurance covering bodily injury or property damage,

and to furnish that insurance at the time of registration.  The statute is "designed to

protect those not in privity with the contractor who might be harmed by his

operations."  *Harman v. Pierce Cnty. Bldg. Dep't*, 106 Wn.2d. 32, 37 (1986) (en

banc).  Because Crook and Boughton asserted a claim for property damage in the

underlying case, RCW 18.27.050 is relevant.

Plaintiffs also argue that Western and Lockton owed a duty to HB, its

members, and the public, all of whom relied on the statement of insurance, to

ensure that the coverage would be for any occurrence during the period of

insurance, regardless of whether the policy was renewed.  ECF No. 27 at 5.

1    Plaintiffs assert that this duty was breached, and as a result, Plaintiffs have been

2    damaged.  ECF No. 27 at 5.

3         Normally, an insurance agent does not have the same duty as an insurer.  *See*

4    *Peterson v. Big Bend Ins. Agency, Inc.*, 150 Wn.App. 504, 515 (Wash. Ct. App.

5    2009) (as amended on reconsideration on July 14, 2009) ("An insurance agent

6    assumes only the duties found in an agency relationship unless the agent assumes

7    additional duties by contract or by holding himself or herself out as possessing an

8    extraordinary skill.").  However, because Plaintiffs cannot establish that anyone,

9    including insurance agents, had a duty to sell only occurrence-based insurance

10   policies, the Court need not consider whether Plaintiffs can show that Lockton had

11   a special duty to them as Western's agent, since the Court finds that no duty was

12   breached.

13        RCW 18.27.050 does not impose a duty on Lockton to sell only occurrence-

14   based insurance policies.  It contains no requirements about the type of insurance a

15   contractor must obtain, other than to require that such insurance cover injury,

16   including death, or damages to property up to a specified amount.  RCW

17   18.27.050.  Nor does the statute require those who sell insurance to contractors to

18   sell only occurrence-based insurance policies.

19        Moreover, the Washington Court of Appeals has held in the context of a

20   different statute that "[c]laims made policies in general do not violate public

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 32

1    policy." *Safeco Title Ins. Co. v. Gannon*, 54 Wn.App. 330, 340 (Wash. Ct. App.

2    1989).  The statute at issue in *Gannon*, RCW 18.44.201, like the statute at issue

3    here, simply requires that insurance or another form of financial responsibility be

4    obtained.  *Id.*  In both instances, the "thrust of the act is not to mandate that

5    insurers provide a particular kind of coverage."  *Id.* at 340-41.  Instead, the purpose

6    is to require that the individuals governed by the statute carry insurance coverage.

7    *Id.*

8        Despite receiving Certificates of Insurance for each year that HB procured

9    liability insurance through Lockton, indicating that HB had a claims-made policy,

10   there is no evidence that the Department of Labor and Industries ever contacted

11   HB to notify HB that it had the wrong type of insurance.  ECF No. 75 at 5.  *See*

12   ECF No. 50-11; ECF No. 76 at 27.

13       Without more, there is no genuine issue of material fact as to whether

14   Western or Lockton were required to procure or sell occurrence-based insurance,

15   or as to whether Western or Lockton acted negligently when they sold HB a

16   claims-made policy.  Thus, the Court grants Western and Lockton's motions for

17   summary judgment as to the negligence claim, and Plaintiffs' negligence claims

18   against Western and Lockton are dismissed with prejudice.

19

20

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 33

**D.    Bad Faith Claims**

Plaintiffs claim that Western and Lockton breached their respective duties of good faith by (1) failing to investigate the demand, (2) misrepresenting or refusing to present pertinent insurance policy provisions, (3) refusing to defend, and (4) wrongfully denying the obligation to indemnify.  ECF No. 27 at 9-10.  Plaintiffs argue that because Western and Lockton acted in bad faith, they are estopped from denying coverage.  ECF No. 27 at 10.

*1.    Legal Standard*

"[A]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith."  *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484 (2003) (en banc).  "To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded."  *Id.*  "An insurer may breach its broad duty to act in good faith by conduct short of intentional bad faith or fraud, although not by a good faith mistake."  *Sharbono v. Universal Underwriters Ins. Co.*, 139 Wn.App. 383, 410-11 (Wash. Ct. App. 2007).  "Whether an insurer acted in bad faith is a question of fact."  *Id.*  Thus, "an insurer is only entitled to . . . dismissal on summary judgment of a policyholder's bad faith claim if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances . . . ."  *Id.*

1    Additionally, "[a]n insurer must make a good faith investigation of the facts

2    before denying coverage . . . ."  *Rizzuti v. Basin Travel Serv. of Othello, Inc.*, 125

3    Wn.App. 602, 618 (Wash. Ct. App. 2005).  "If the insured claims that the insurer

4    denied coverage unreasonably in bad faith, then the insured must come forward

5    with evidence that the insurer acted unreasonably."  *Smith*, 150 Wn.2d at 486.

6    "The insured does not establish bad faith when the insurer denies coverage or fails

7    to provide a defense based upon a reasonable interpretation of the insurance

8    policy."  *Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*, 170 Wn.App. 666, 677

9    (Wash. Ct. App. 2012).

10    Additionally, an insurer is relieved of its duty to defend if the alleged claims

11    are clearly not covered by the policy.  *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558,

12    561 (1998).  "[A] reasonable basis for denying coverage constitutes a complete

13    defense to any claim that the insurer denied coverage in bad faith or in violation of

14    the CPA."  *Rizzuti*, 125 Wn.App. at 622.  "The insurer is entitled to summary

15    judgment if reasonable minds could not differ that its denial of coverage was based

16    upon reasonable grounds."  *Smith*, 150 Wn.2d at 486.

17    Furthermore, although an insurance agent only assumes those duties

18    normally found in an agency relationship, those duties encompass the obligation to

19    exercise good faith.  *Shows v. Pemberton*, 73 Wn.App. 107, 113-14 (Wash. Ct.

20    App. 1994).  Lockton entered an agreement to act as Western's agent, and in

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 35

1    performance of this agreement, Lockton dealt with HB on Western's behalf.

2    Therefore, Plaintiffs argue that Lockton had a duty of good faith to HB and its

3    members for actions taken within the scope of the agency relationship.

4          2.      _Western's Alleged Bad Faith for Refusing to Defend or Indemnify_

5          Plaintiffs have failed to present any evidence that Western acted

6    unreasonably when it refused to defend or indemnify HB, Hawley, and Brown.  To

7    the contrary, the evidence shows that Western, through Integrity, conducted a

8    reasonable investigation into the coverage of Crook and Boughton's claim, and

9    refused to defend and indemnify in good faith and in conformance with the

10    policy's terms.  Therefore, there is no genuine issue of material fact as to whether

11    Western acted in bad faith for refusing to defend or indemnify HB, Hawley, and

12    Brown.

13          Western first received notice of the claim on January 23, 2012, when Crook

14    and Boughton copied Western on a Notice of Claim provided to HB under RCW

15    64.50.020.[12]  ECF No. 48 at 20-24.  Diane Esser, an Integrity employee and

16    Western's claims administrator, reviewed Western's files and found that no prior

17    _____

    [12] RCW 64.50.020 requires a contractor who receives a notice to respond within 21

18    days; if the contractor disputes the claim, the claimant may bring an action.  RCW

19    64.50.020.

20

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 36

1    report had been received regarding Crook and Boughton's residence, that HB's

2    policy had been cancelled effective January 14, 2010, and that no SERP had been

3    purchased.  ECF No. 48 at 21.  Ms. Esser determined that there was no coverage

4    for this claim, and on February 1, 2012, she mailed a letter to HB and to Crook and

5    Boughton's attorney denying any coverage or defense.  ECF No. 48 at 58-59.

6         Subsequently, Crook and Boughton filed the action against HB in Benton

7    County Superior Court, and HB's attorney re-tendered the claim to Western on

8    May 31, 2012, requesting re-evaluation.  ECF No. 48 at 61-63.  Ms. Esser

9    forwarded the re-tender to outside counsel for review, and on August 8, 2012, Ms.

10   Esser affirmed the earlier denial and supplemented it with additional discussion.

11   ECF No. 48 at 74-75.  Western conducted a reasonable investigation into the

12   claim's coverage, and determined in good faith that the claim was not covered by

13   the policy.  The investigation did not raise any doubt as to the lack of coverage and

14   did not suggest that any further investigative steps were necessary.  *See Rizzuti*,

15   125 Wn.App. at 618.

16        Similarly, Western's determination that the claim was not covered was based

17   on a reasonable interpretation of the policy.  *See Wellman & Zuck, Inc.*, 170

18   Wn.App. at 677.  Plaintiffs misstated the law during oral argument and repeatedly

19   argued that Western had a duty to defend if there was any "colorable" basis for

20   coverage.  The standard, however, is not whether there is a "colorable" basis for

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 37

coverage, but whether there is a "reasonable" basis for denying coverage.  In this case, there was.

The policy clearly states in plain language that it provides claims-made insurance, that coverage is triggered only after notification of a claim for damages is made to Western, and that such notification must occur either within the coverage period or an extended reporting period.  The claim was not reported to Western until well after the extended reporting period had passed.  Western's determination that the policy did not cover the claim was reasonable, as was their refusal to defend or indemnify HB, Hawley and Brown in the underlying lawsuit. There were no unsettled issues of law or fact that would have required Western to defend under a reservation of rights and seek a declaratory judgment.  Because there is no genuine dispute as to whether the policy covered Crook and Boughton's claim, there is no genuine dispute regarding Western's alleged bad faith for failing to defend or indemnify HB and its members.

### 3.  _Lockton's Alleged Bad Faith for Refusing to Defend or Indemnify_

Plaintiffs conceded during oral argument that their bad faith claim against Lockton is "weak," because Lockton is not the insurer.  Indeed, there is no genuine issue of material fact regarding Lockton's alleged bad faith for failing to defend or indemnify.  Because Lockton was only an insurance agent, it could neither defend nor indemnify.  Moreover, Lockton ceased to act as Western's agent in 2007, some

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 38

five years before Plaintiffs ever filed their claim with Western.  There is no light in which the facts could be viewed that would provide any reasonable basis for a finding of bad faith against Lockton for its alleged failure to defend or indemnify Plaintiffs.

   *4.*  <u>*Western and Lockton's Bad Faith for Misrepresenting the Policy*</u>

    Plaintiffs also argue that Western and Lockton breached their duties of good faith by misrepresenting the terms of the claims-made policy.  Specifically, Plaintiffs contend that Western and Lockton misrepresented the policy's terms when they sent a letter to HB informing HB that its insurance provider would be changing, and that the new insurer would provide a "replacement" policy.  ECF No. 51 at 16-17; ECF No. 50-7.

    Plaintiffs appear to be arguing that a misrepresentation of a pertinent policy provision constitutes per se bad faith, yet they have failed to cite any support for this contention.  Instead, Plaintiffs cite to Title 48 of the Revised Code of Washington, which states:  "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."  RCW 48.01.030.  Plaintiffs cite other provisions of Title 48, yet none of them states that a misrepresentation of a policy term constitutes per se bad faith.  Nor do Plaintiffs point to any case law, and the Court is not aware of any, establishing a framework

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 39

1  under which a bad faith claim based on an alleged misrepresentation of a policy

2  provision might be analyzed.

3       Even if there was authority supporting Plaintiffs' position, the Court does

4  not find that there is any evidence that the use of the term "replacement policy"

5  constituted bad faith.  There is no evidence that this phrase was intentionally

6  chosen to deceive or mislead HB, Hawley, or Brown, or that Western or Lockton

7  had any reason to believe that it might deceive or mislead them.  The letter did not

8  state that the new policy was "an exact replacement policy," only a "replacement

9  policy."  Therefore, there is no basis on which to find that Western or Lockton

10  acted in bad faith when they sent the "replacement" letter.

11       The Court also will consider Plaintiffs' contentions that Western and

12  Lockton misrepresented the terms of the policy within the framework of Plaintiffs'

13  allegations that Western and Lockton violated the Consumer Protection Act.

14  **E.**      **Consumer Protection Act Claims**

15       Plaintiffs also allege that Lockton and Western violated the Washington

16  Consumer Protection Act (CPA), RCW 19.86, when they sent the "replacement"

17  letter to HB.  ECF No. 27 at 10-11; ECF No. 50-7.  Plaintiffs also pleaded that

18  Lockton violated WAC 284-30-330, WAC 284-30-360, WAC 284-30-670, and

19  WAC 284-30-580, which constitute violations of the CPA, but they only discussed

20  WAC 284-30-330 in their briefings.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 40

"To prevail on a CPA claim, the claimant must satisfy [a] five-part test . . . : (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act." *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 134 (2008) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85 (1986)). "Whether a particular act or practice is unfair or deceptive is reviewable as a question of law." *Potter v. Wilbur–Ellis Co.,* 62 Wn.App. 318, 327 (Wash. Ct. App. 1991). "The statute does not define 'unfair and deceptive'; the court must interpret the term." *Id.*

There are several ways that a claimant may demonstrate an unfair or deceptive act or practice in trade or commerce. For one, a claimant may show that "an act or practice which has the capacity to deceive a substantial portion of the public . . . has occurred in the conduct of any trade or commerce." *Hangman Ridge*, 105 Wn.2d at 785-86. There is no evidence in this case that the "replacement" letter, which was sent specifically to HB about HB's policy, had the capacity to "deceive a substantial portion of the public."

Second, "bad faith constitutes a per se violation of the CPA." *Ledcor Indus. (USA), Inc. v. Mutual of Enumclaw Ins. Co.*, 150 Wn.App. 1, 12 (Wash. Ct. App. 2009). Having determined already that there is no genuine dispute regarding

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 41

1    whether Western acted in bad faith when it refused to defend or indemnify,

2    Plaintiffs are unable to demonstrate a CPA violation on this basis.

3         Third, the first two prongs of the CPA test may be established per se "when

4    a statute which has been declared by the Legislature to constitute an unfair or

5    deceptive act in trade or commerce has been violated." *Id*. at 786.  Plaintiffs point

6    to WAC 284-30-330, the Unfair Claims Settlement Practices regulation, which

7    defines "unfair methods of competition and unfair or deceptive acts or practices of

8    the insurer in the business of insurance, specifically applicable to the settlement of

9    claims" as "(1) Misrepresenting pertinent facts or insurance policy

10   provisions . . . ."  WAC 284-30-330.

11        The "replacement" letter was not sent in connection with the settlement of

12   claims.  Rather, the letter was sent eight years prior to Crook and Boughton's filing

13   their claim, as notification of a change in HB's insurance policy.  Thus, WAC 284-

14   30-330, defining unfair or deceptive acts or practices, "specifically applicable to

15   the settlement of claims," does not apply to any alleged misrepresentations in the

16   "replacement" letter.

17        Moreover, because Lockton is not itself an insurer and was not involved as

18   an agent to an insurer in the settlement of HB's claims, WAC 284-30-330 does not

19   apply to Lockton at all.  As to arguments that Western violated WAC 284-30-330

20   by any other conduct made during the course of settlement, there do not appear to

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 42

be any other applicable "unfair settlement practices" that the Court has not already considered and dismissed.  Thus, Plaintiffs cannot meet their burden to show an unfair or deceptive act or practice in trade and commerce by any alleged violations of WAC 284-30-330.

Fourth, and finally, the Court may still find that Western or Lockton committed an unfair or deceptive act or practice in trade or commerce if it determines by law that such an act occurred.  *Potter,* 62 Wn.App. at 327.

> A buyer and seller do not deal from equal bargaining positions when the latter has within his knowledge a material fact which, if communicated to the buyer, will render the goods unacceptable or, at least, substantially less desirable.  Failure to reveal a fact which the seller is in good faith bound to disclose may generally be classified as an unfair or deceptive act due to its inherent capacity to deceive and, in some cases, will even rise to the level of fraud.

*Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wn.App. 39, 51 (Wash. Ct. App. 1976).  "Proof of intention to deceive is not a prerequisite to finding a violation under the [CPA]. . . .  Thus, defendant's good faith is irrelevant in a determination of whether a deceptive or unfair practice exists."  *Id.* at 50-51.

At the hearing, Plaintiffs argued that Western and Lockton executives came together and carefully crafted the language of the infamous "replacement" letter in order to mislead contractors and ensure their continued profits from selling insurance through the RWC program.  Plaintiffs also intimated that Western and Lockton engaged in intentional deception when they placed the name of Joe

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 43

Perkins at the bottom of the "replacement" letter, because they allege that Joe Perkins knew nothing about this letter and never actually signed it.

The deposition testimony indicates that the letter at issue was generated by a computer, and that the name of Joe Perkins, HB's designated account manager, was signed electronically.  ECF No. 52-4 and 52-5.  There is no evidence that Western and Lockton executives meticulously chose the wording of this letter, or that they intended to deceive anyone by issuing a computer-generated letter that was signed electronically by the insured's designated account manager.  However, it is not necessary that Plaintiffs demonstrate intentional deception in order to establish an unfair or deceptive act or practice.

Nevertheless, the language in the letter immediately following the term "replacement policy" warned readers that notices accompanying the policy would explain the differences in coverage.  Plaintiffs conceded both in their briefing and during oral argument that those notices were provided and that Fraser Hawley received and signed them.  ECF No. 50 at 4; ECF No. 57 at 3; ECF No. 50-8.  The content of those notices was discussed in depth during the Court's consideration of the coverage of the underlying claims.

There is no evidence that Western or Lockton hid the ball in any way or neglected to disclose the differences in coverage between HB's original occurrence-based policy and its new claims-made policy.  Nor is there any

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 44

evidence that the use of the term "replacement" meant "exact replacement."  Of all the documentation that HB and its members received regarding their coverage and opportunities to purchase extended tail coverage, Plaintiff's entire case rests on one word, "replacement," nestled among dozens of pages of documentation and information about the policy and its terms.

There is no evidence that the use of the word "replacement" was intentionally deceptive, and there is no genuine issue of material fact as to whether Western or Lockton engaged in an unfair or deceptive act or practice in trade or commerce.

Because the Court concludes that there is no genuine dispute regarding Plaintiffs' inability to establish the first prong of the CPA test, the Court need not consider whether Plaintiffs could make out the remaining three elements of the test.  Western and Lockton's motions for summary judgment as to Plaintiffs' CPA violations claims are granted.  Plaintiffs' CPA claims are dismissed with prejudice.

## CONCLUSION

Hawley and Brown were sophisticated business owners.  Hawley had dealt with commercial insurance policies in a prior position.  Hawley and Brown operated a business at their own risk, and chose not to apprise themselves of the specific terms of their insurance policy.  They knew of Crook and Boughton's

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 45

complaints regarding the construction of their home, yet never reported these complaints to their insurance provider.

When Hawley and Brown dissolved their business, they did so without purchasing extended tail coverage that would have ensured continued coverage for Crook and Boughton's claims.  To find that Western's claims-made policy was intended to cover Crook and Boughton's claims nearly three years after the policy had expired would give Hawley and Brown free, unlimited tail coverage for which they never bargained.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant Western Pacific's Motion for Summary Judgment, **ECF No. 47**, is **GRANTED**.

2.    Defendant Lockton Risk Services' Motion for Summary Judgment, **ECF No. 49**, is **GRANTED**.

3.    Defendant Lockton Risk Services' Motion to Strike Declarations of Flo Brown, **ECF No. 67**, is **DENIED**.

4.    Plaintiffs' complaint, **ECF No. 1**, is **DISMISSED WITH PREJUDICE**.

5.    All pending motions, if any, are **DENIED AS MOOT**.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 46

6.    All scheduled hearings, if any, are **STRICKEN**.

The District Court Clerk is directed to enter this Order, enter Judgment

accordingly, **and close this case**, and provide copies of this Order to counsel.

**DATED** this 6th day of February 2015.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 47